John T. Egley, Bar No. 232545
  jegley@calljensen.com
Chris C. Scheithauer, State Bar No. 184798
  cscheithauer@calljensen.com
CALL & JENSEN
A Professional Corporation
610 Newport Center Drive, Suite 700
Newport Beach, CA  92660
Tel:   (949) 717-3000

Attorneys for Plaintiff
Syncis Insurance Solutions, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNCIS INSURANCE SOLUTIONS, LLC, a Delaware Limited Liability Company<br><br>Plaintiffs,<br><br>vs.<br><br>INSURANCE DISTRIBUTION CONSULTING, LLC, a Florida Limited Liability Company<br><br>Defendant. | Case No.  2:25-cv-3874<br><br>**COMPLAINT FOR:**<br>**1. Breach of Contract; and**<br>**2. Declaratory Relief**<br><br>**(DEMAND FOR JURY TRIAL)** |

CALL & JENSEN

Plaintiff Syncis Insurance Solutions, LLC ("Plaintiff" or "Syncis" or "Company"), by and through its counsel, hereby complains against Defendant Insurance Distribution Consulting, LLC ("Defendant" or "IDC" or "Consultant") and alleges as follows:

## THE PARTIES

1.     Plaintiff Syncis Insurance Solutions, LLC, successor in interest to Syncis Insurance Solutions, Inc., is a Delaware limited liability company whose principal place of business is located in Long Beach, California.

2.     Defendant Insurance Distribution Consulting, LLC is a Florida limited liability company. Plaintiff is informed and believes, and thereon alleges, that Defendant's principal place of business is located at Florida.

3.     Plaintiff is informed and believes, and thereon alleges, that Defendant is controlled by its principal, Michael W. Jones, who is its sole member. Mr. Jones is also the sole manager of Defendant.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction under 28 U.S.C. §1332(a) because there is complete diversity of citizenship and the amount in controversy exclusive of interest and cost exceeds Seventy-Five Thousand Dollars.

5.     This Court has personal jurisdiction over Defendant because it routinely transacts business in California and in this district. Additionally, Defendant's violations of law were perpetrated by Defendant on California in California and Defendant entered into a contract in California with a California company. Furthermore, the actions alleged in this Complaint occurred, were accomplished, and had their purposeful effects and otherwise caused harm to Plaintiff in California.

6.     Defendant had the minimum contacts with California in connection with the acts and omissions alleged in this Complaint to subject Defendant to personal jurisdiction in California, including, without limitation, negotiating and entering into an agreement with Plaintiff in California and communicating directly with Plaintiff in California about its work and services performed for Defendant, and agreeing to submit to California law.

7.     Venue is proper in this District pursuant to 28 U.S.C. §§1391(b) because: (a) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District; (b) Defendant regularly conducts business in this District; (c) the unlawful acts of Defendant complained of herein were committed within this District and have had effect in this District; and (d) the written agreement/contract as identified and described more thoroughly below was entered into by the respective parties in this District.

## GENERAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

8.     Plaintiff Syncis is one of the top financial independent marketing organizations ("IMO") in America. Plaintiff brings together individuals, families, small business owners, and some of the largest insurance and financial services providers in America to make financial products and services more accessible to families. Plaintiff is not an insurance company.

9.     As an IMO, Plaintiff creates a marketing and support platform to connect independent insurance agents building their own insurance agency business with insurance companies and products. Plaintiff receives income from portions of Agent commissions that third-party insurance companies pay to Agents and commission bonuses for aggregating production of multiple Agents, in addition to revenue from ticket sales from an optional annual company marketing and training event.

10.     Plaintiff and Defendant entered into a written Distribution Consulting Agreement with an "Effective Date" of June 1, 2014, which the two parties officially signed on August 14, 2014. Plaintiff and Defendant signed an "Amendment No. 1 to Distribution and Consulting Agreement", which amendment became effective February 1, 2017. The original 2014 Distribution Consulting Agreement along with the Amendment No. 1 are collectively referred to herein as the "Agreement." The Agreement is attached hereto as **Exhibit A**. Certain financial information has been redacted from Exhibit A.

11.     Pursuant to the Agreement, Defendant represented and agreed that it would perform the following "Services":

a. Seek out and help negotiate insurance distribution agreements with insurance carriers to enhance value to Plaintiff.

b. Conduct all of the fixed insurance production of Defendant, or the fixed insurance production of any entity that Defendant controls, through Plaintiff's insurance producer contracts.

c. Assist Plaintiff with the coordination of its office to effectively meet industry compliance standards.

d. Work with insurance carriers to help develop proprietary insurance products for Plaintiff.

e. Assist Plaintiff with the recruiting of major insurance producers.

f. Assist Plaintiff with the handling of any administrative issues relating to distribution agreements with insurance carriers, Consultants, and other distributors.

g. Work with insurance carriers to improve illustrations and other sales tools.

h. Work with outside investors to explore potential investment rounds or sale of Plaintiff.

12. In consideration for Defendant providing all of the Services on an ongoing basis, paragraph 2 of the Agreement provided that "during the Term of the Agreement" Defendant would receive certain compensation.

13. Pursuant to the "Amendment No. 1 to Distribution and Consulting Agreement", which amendment became effective February 1, 2017, the compensation rates to Defendant were modified, but did not change the Services that Defendant was required to provide.

14. Defendant initially provided some of the Services.

15. However, in the last several years, Defendant has not performed the Services on an ongoing basis. Specifically, Plaintiff is informed and believes, and on that basis alleges that over the last few years:

a. Defendant has not sought out and helped negotiate insurance distribution agreements with insurance carriers to enhance value to Plaintiff on an ongoing basis.

b. Defendant has not conducted all of the fixed insurance production of Defendant, or the fixed insurance production of any entity that Defendant controls, through Plaintiff's insurance producer contracts on an ongoing basis.

c. Defendant has not assisted Plaintiff on an ongoing basis with the coordination of its office to effectively meet industry compliance standards.

d. Defendant has not worked with insurance carriers on an ongoing basis to help develop proprietary insurance products for Plaintiff.

e. Defendant has not assisted Plaintiff with the recruiting of major insurance producers on an ongoing basis.

f. Defendant has not assisted Plaintiff with the handling of any administrative issues relating to distribution agreements with insurance carriers, Consultants, and other distributors on an ongoing basis.

g. Defendant has not worked with insurance carriers on an ongoing basis to improve illustrations and other sales tools.

h. Defendant has not worked with outside investors on an ongoing basis to explore potential investment rounds or sale of Plaintiff.

16. Defendant's failure to perform all of the Services on an ongoing basis constitutes a breach of the Agreement.

17. Pursuant to Section 5 of the Agreement, Defendant agreed as follows: REPORTS. Consultant shall provide to Company periodic written reports of Consultant's activities in a manner and format acceptable to Company, and shall provide related work records, meeting reports, and similar documents as requested by the Company. Consultant

1    agrees to be available for meetings with Company employees and
2    contractors.

3    18.    Defendant breached the covenant set forth in Section 5 of the Agreement
4    because Defendant did not comply with its obligations to provide reports and documents
5    as set forth therein.

6    19.    Pursuant to Section 4 of the Agreement, either party may terminate the
7    Agreement with or without cause with thirty days written notice. However, the
8    Agreement further provides that:

9    This agreement may be terminated immediately for-cause by Company upon
10    any one of the following occurrences, as determined by the Company in good
11    faith:

12    •    Failure of Consultant to perform the Services on an ongoing basis and
13    failure to cure lack of performance within 60 days of receiving notice;
14    . . .

15    •    Any breach of any representation, warranty, or covenant of Consultant
16    in this Agreement, or otherwise made to Company.

17    20.    Pursuant to Section 4 of the Agreement, in the event of a termination for
18    cause, Plaintiff "shall have not further obligations under this Agreement."

19    21.    Accordingly, Defendant's failure to provide the Services identified in
20    Section 1 of the Agreement not only constitutes a breach of contract but it also allowed
21    Plaintiff to properly terminate the Agreement "for-cause" after Defendant failed to cure
22    such default after notice thereof.

23    22.    Moreover, Defendant's failure to comply with the covenant set forth in
24    Section 5 of the Agreement requiring Defendant to provide certain records and other
25    written reports permitted Plaintiff to terminate the Agreement "immediately for-cause."

26    23.    Plaintiff has repeatedly demanded that Defendant perform the Services on
27    an ongoing basis as required by the Agreement and to provide various records and written
28    reports as required by the Agreement.

24.    Notwithstanding the repeated requests identified above, Defendant failed to provide the Services on an ongoing basis required.

25.    Notwithstanding the repeated requests identified above, Defendant failed to provide the various records and written reports as requested and as required.

26.    Following Plaintiff's frustrations with Defendant's ongoing lack of performance of the Services and refusal to cure such non-performance, Plaintiff sent a letter, dated February 26, 2025, to Defendant (the "February 26, 2025 Letter"). That letter was sent by email and overnight mail. The February 26, 2025 Letter is attached hereto as **Exhibit B.**

27.    On February 26, 2025, Defendant received by email the February 26, 2025 Letter at the email address of mwjones87@msn.com.

28.    Plaintiff's February 26, 2025 Letter to Defendant expressly noted that it was in regards as follows: "Demant to Perform and Cure Lack of Performance Under June 1, 2014 Distribution Consulting Agreement and Amendment No. 1."

29.    Plaintiff's February 26, 2025 Letter noted in part that:

"Pursuant to Section 1 of the Agreement, IDC was and is required to perform the following Services:

• Seek out and help negotiate insurance distribution agreements with insurance carriers to enhance value to Company.

• Conduct all of the fixed insurance production of Consultant, or the fixed insurance production of any entity that Consultant controls, through Company's insurance producer

contracts.

• Assist Company with the coordination of its office to effectively meet industry compliance standards.

• Work with insurance carriers to help develop proprietary insurance products for Company.

• Assist Company with the recruiting of major insurance producers.



• Assist Company with the handling of any administrative issues relating to distribution agreements with insurance carriers, Consultants, and other distributors.

• Work with insurance carriers to improve illustrations and other sales tools.

• Work with outside investors to explore potential investment rounds or sale of Company."

30.    Plaintiff's February 26, 2025 Letter to Defendant stated that Plaintiff's understanding and good faith believe are that Defendant is not currently performing the Services defined in the Agreement and has not performed the Services for a significant period of time.

31.    Plaintiff's February 26, 2025 Letter to Defendant demanded:

… "that within the next 60 days IDC do the following:

1. IDC must cure its lack of performance of the Services under the Agreement.

2. Pursuant to Section 5 of the Agreement, IDC must provide a written report of all IDC's activities under the Agreement and shall provide all related work records, meeting reports, emails, or other documents regarding each of the Services IDC claims to have performed under the Agreement for the following years through the date of response:

2021, 2022, 2023, 2024 and 2025. As you are already aware, Les Schlais has no formal role or position with Syncis as of February 1, 2023, and any Services that IDC may claim to have performed on behalf of Mr. Schlais after that date do not pertain to the Agreement.

3. Provide Syncis a written report detailing IDC's specific plans in 2025 to perform each of the specified Services.

4. Provide Syncis a written report with appropriate accounting back-up for the fixed insurance production totals of Supreme Alliance LLC

("Supreme") from 2023 through present. According to FINRA's public records, this entity is currently owned by IDC and has been owned by IDC throughout the duration of the Agreement. It is our understanding and belief that Supreme is not currently sending all its fixed insurance business through Syncis' producer contracts, as required under Section 1 of the Agreement.

5. Provide Syncis with copies of any agreements between IDC and Freedom Equity Group ("FEG") from 2014 to the present."

32.    On March 7, 2025, Michael W. Jones of Defendant provided an initial response to Plaintiff's February 26, 2025 Letter. In Defendant's response, Defendant stated in part: "IDC is not sure what you mean by demand to perform and cure, as there is nothing to cure."

33.    Instead of providing a proper written report with all the related work records, meeting reports, emails, or other documents regarding each of the Services Defendant claims to have performed under the Agreement as demanded by Plaintiff, Defendant instead made threats of suing Plaintiff *and its founders personally* if Plaintiff attempted to terminate the Agreement. Defendant's non-responsive March 7, 2025 email stated in part: "any lawsuit will have to include both John Kim and Les the beneficial owners as defendants, even though they have nothing to do with any decisions…"

34.    On March 11, 2025, Plaintiff received a threatening email from Defendant wherein Defendant again threatened to sue Plaintiff's principals individually if Plaintiff attempted to terminate the Agreement.

35.    Defendant's March 11, 2025 email to Plaintiff stated in part: "IDC will have no choice but to file any lawsuit for breach against [Syncis'] Principals for decision that none of them have any part in."

36.    On March 28, 2025, Plaintiff sent a follow up letter to Defendant via overnight mail and e-mail (the "March 28, 2025 Letter"). The March 28, 2025 Letter is attached hereto as **Exhibit C**.

37.    On March 28, 2025, Defendant received by email the March 28, 2025 Letter at the email address of mwjones87@msn.com.

38.    Plaintiff's March 28, 2025 Letter to Defendant acknowledged Defendant's non-responsive March 7, 2025 email claiming that "there is nothing to cure."

39.    Plaintiff's March 28, 2025 Letter to Defendant further stated in part: Defendant's "March 7, 2025 emails appears to have ignored all of the requests for information in our prior letter…"

Plaintiff's March 28, 2025 Letter to Defendant further stated in part:

Note also, that pursuant to Section 4 of the Agreement, IDC's failure and refusal to provide the reports demanded by Syncis in its prior February 26, 2025 letter constitutes a breach of a "representation, warranty or covenant" contained in the Agreement, including, among others, the covenant set forth in Section 5 of the Agreement to provide the reports and documents requested by Syncis. IDC's refusal to provide the reports demanded by Syncis permit Syncis additional grounds to terminate the Agreement.

40.    Plaintiff's March 28, 2025 Letter to Defendant further stated that Plaintiff believed that a "for cause" termination was proper if Defendant failed to cure the lack of performance and failed to provide all the reports and related documents that Plaintiff had previously demanded.

41.    Plaintiff's March 28, 2025 Letter notified Defendant that even if grounds for "for-cause" termination do not exist on April 27, 2025 (60 days from Plaintiff's February 26, 2025 Letter), Plaintiff nevertheless elected to terminate the Agreement on April 27, 2025 (30 days from the March 30, 2025 Letter).

42.    On April 25, 2025, Plaintiff received another email from Defendant that failed to adequately cure Defendants' non-performance of Services and still failed to provide all the documents, reports and records Plaintiff previously requested.

43.    Indeed, Plaintiff's April 25, 2025 email suggested that Defendant did not have to perform any Services and could just sit back and do nothing in perpetuity and

1  continue to get paid under the Agreement indefinitely. But Plaintiff disagrees with
2  Defendant on that point.

3      44.    Defendant claimed in its April 25, 2025 email that the Services were mainly
4  performed only "during [the] early days of Syncis", that "IDC performed these functions
5  when needed in [the] early days…" and the Services were performed when Syncis was
6  being originally established "and needed those services which are primarily one time…"

7      45.    Defendant claimed in its April 25, 2025 email that the Agreement is a fully
8  "vested contract" that cannot be terminated.

9      46.    Defendant claimed in its April 25, 2025 email that Plaintiff must continue
10 paying Defendant in perpetuity "for what IDC has done not what IDC is doing,"

11     47.    Defendant disputes that the Agreement cannot be terminated
12 notwithstanding Defendant's failure to provide the Services on an ongoing basis.

13     48.    On April 30, 2025, Plaintiff sent formal notice to Defendant, via overnight
14 mail and e-mail, terminating the Agreement ("April 30, 2025 Letter"). A copy of the April
15 30, 2025 Letter is attached hereto as **Exhibit D**.

16     49.    On April 30, 2025, Defendant received by email the April 30, 2025 Letter at
17 the email address of <u>mwjones87@msn.com</u>.

18     50.    Plaintiff's April 30, 2025 Letter to Defendant stated in pertinent part:
19         "Accordingly, Syncis effectuates a "for-cause" termination under Section 4 of
20         the Agreement for, among other reasons: (1) "Failure of [IDC] to perform the
21         Services on an ongoing basis" and failing to cure such nonperformance
22         following Syncis' February 26, 2025 demand; and (2) IDC's failure and
23         refusal to provide the reports and information demanded by Syncis in its
24         February 26, 2025 letter, which constitutes a breach by IDC of a
25         "representation, warranty or covenant" contained in the Agreement,
26         including, among others, the covenant set forth in Section 5 of the Agreement
27         to provide the reports and documents requested by Syncis. While Syncis is
28         confident that its decision to terminate the Agreement "for-cause" is proper



and effective, Syncis alternatively terminates the Agreement without cause per the notice provided on March 28, 2025."

51.     Prior to at least April 30, 2025, Defendant did not provide a written report to Plaintiff of Defendant's activities under the Agreement along with all related work records, meeting reports or other documents regarding each of the Services that Defendant claims to have performed under the Agreement for calendar year 2021.

52.     Prior to at least April 30, 2025, Defendant did not provide a written report to Plaintiff of Defendant's activities under the Agreement along with all related work records, meeting reports or other documents regarding each of the Services that Defendant claims to have performed under the Agreement for calendar year 2022.

53.     Prior to at least April 30, 2025, Defendant did not provide a written report to Plaintiff of Defendant's activities under the Agreement along with all related work records, meeting reports or other documents regarding each of the Services that Defendant claims to have performed under the Agreement for calendar year 2023.

54.     Prior to at least April 30, 2025, Defendant did not provide a written report to Plaintiff of Defendant's activities under the Agreement along with all related work records, meeting reports or other documents regarding each of the Services that Defendant claims to have performed under the Agreement for calendar year 2024.

55.     Prior to at least April 30, 2025, Defendant did not provide a written report to Plaintiff of Defendant's activities under the Agreement along with all related work records, meeting reports or other documents regarding each of the Services that Defendant claims to have performed under the Agreement from January 1, 2025 to April 30, 2025.

56.     Prior to at least April 30, 2025, Defendant did not provide a written report to Plaintiff detailing Defendant's specific plans in 2025 to perform each of the Services listed in the Agreement.

57.     Defendant has never been an employee, officer, shareholder, or board member of Plaintiff.

58.    Michael W. Jones has never been an employee, officer, member, shareholder, manager, or board member of Plaintiff.

59.    Defendant has no ownership interest in Plaintiff.

60.    Plaintiff is informed and believes, and thereon alleges, that during the Term of the Agreement, Defendant never directly solicited or sold any insurance policies as an insurance producer.

61.    Defendant served as a consultant to Plaintiff.

62.    Plaintiff is informed and believes, and thereon alleges, that Defendant has not received any sales commissions directly from an insurance company for new business issued by Defendant during the Term of the Agreement.

63.    During the Term of the Agreement, the only compensation that Defendant received from Plaintiff was monthly payments made by Plaintiff to Defendant pursuant to the Agreement.

64.    Plaintiff paid Defendant all sums Plaintiff owed to Defendant during the Term of the Agreement.

65.    Plaintiff paid Defendant compensation under the Agreement in each of the calendar years 2021, 2022, 2023, and 2024 that was more than 100% higher than each of the calendar years 2014, 2015, 2016, 2017, 2018, and 2019.

66.    Thus, since 2021, Defendant's annual compensation received under the Agreement was substantially more than the annual compensation Defendant received from 2014 through 2019, notwithstanding that Defendant's performance of the Services diminished greatly, if not completely, from 2021 through 2024.

67.    Plaintiff is informed and believes, and thereon alleges, that during the Term of the Agreement, Defendant received compensation directly from Freedom Equity Group, LLC ("FEG") or one or more of FEG's principals.

68.    Plaintiff is informed and believes, and thereon alleges, that during the Term of the Agreement, Michael W. Jones received compensation directly from Freedom Equity Group, LLC ("FEG") or one or more of FEG's principals.

69.    Plaintiff is informed and believes, and thereon alleges, that defendant did not seek our or help negotiate any new insurance distribution agreements with insurance carriers for Plaintiff after 2019.

70.    Plaintiff is informed and believes, and thereon alleges, that defendant did not obtain any insurance company appointments under Plaintiff's insurance producer contracts until 2015.

71.    Plaintiff is informed and believes, and thereon alleges, that Supreme Alliance LLC is an insurance producer entity owned and controlled by Defendant and its principal, Michael W. Jones.

72.    Prior to at least April 30, 2025, Defendant did not provide Plaintiff with a written report with accounting back-up for the fixed insurance production totals of Supreme Alliance LLC from 2023 to April 30, 2025.

73.    Plaintiff is informed and believes, and thereon alleges, that Defendant or its principal, Michael W. Jones, has had an agreement or agreements with FEG to provide FEG with services at some point between 2014 to the present.

74.    Prior to at least April 30, 2025, Defendant did not provide Plaintiff with documentation demonstrating terms of the agreement between FEG and Defendant or its principal, Michael W. Jones.

75.    Plaintiff is informed and believes, and thereon alleges, that during the Term of the Agreement, Defendant did not conduct all of its fixed insurance business production of Defendant, or the fixed insurance production of all other entities that Defendant controls, through Plaintiff's insurance producer contracts.

76.    Defendant did not develop or contribute to the development of any proprietary products for Plaintiff after 2016.

77.    Defendant has not contributed to Plaintiff directly recruiting any major insurance producers after 2019.

78.    Defendant has not communicated with Plaintiffs' office staff to help meet compliance related standards after 2016.

COMPLAINT

79.    Defendant has not worked with Plaintiff's insurance carriers to improve illustrations and other sales tools after 2017.

## FIRST CAUSE OF ACTION

### (Breach Of Contract Against Defendant)

80.    Plaintiff incorporates by reference each of the foregoing paragraphs of this Complaint, as though fully set forth herein.

81.    In 2014, Plaintiff and Defendant entered into the Agreement.

82.    The Agreement is a valid and enforceable contract.

83.    Except as excused by the acts, breaches and omissions of Defendants, Plaintiff has performed all conditions, covenants and promises required by it to be performed in accordance with the terms and conditions of the Agreement.

84.    Defendant has breached the Agreement by:

   a.  Failing to perform the Services;

   b.  Failing to cure its failure to perform the Services even after Plaintiff made a demand for Defendant to do so;

   c.  Breaching the covenant in Section 5 of the Agreement by failing and refusing to provide to Plaintiff periodic written reports of Defendant's activities in a manner and format acceptable to Plaintiff, as well as providing all related work records, meeting reports, and similar documents as requested by the Plaintiff;

   d.  Failing to conduct all Defendant's fixed insurance production, or the fixed insurance production of all entities that Defendant controls, through Plaintiff's insurance producer contracts; and

   e.  Activities that constitute a breach of a representation, warranty, or covenant of Defendant contained in the Agreement or otherwise which Plaintiff made to Plaintiff.

85.    As a result of the breach of the Agreement by Defendant, Plaintiff has been damaged, the full nature and extent of which is presently unknown, but in an amount

greater than the minimum jurisdiction of this Court. Based on information and belief, and thereon alleged herein, Plaintiff estimates that it overpaid Defendant and otherwise suffered lost income and wages from Defendant's unlawful conduct in excess of $3,000,000. Plaintiff will set forth the full extent and nature of its damages at trial.

86.    In addition to recovering amounts that Defendant was not entitled to receive, Plaintiff is entitled to interest at the rate of ten percent (10%) per annum, or appropriate legal rate, from the date the debt was incurred, in a total amount to be proved at trial.

87.    Pursuant to the Agreement, Plaintiff is entitled to recover its attorneys' fees, costs and expenses (including, without limitation, expert expenses) as a result of bringing this action, in a sum according to proof.

## SECOND CAUSE OF ACTION

### (Declaratory Relief Against Defendant)

88.    Plaintiff incorporates by reference each of the foregoing paragraphs of this Complaint, as though fully set forth herein.

89.    An actual controversy has arisen and now exists between Plaintiff and Defendant. Plaintiff contends that:

    a.  Plaintiff properly terminated the Agreement "for-cause" and Plaintiff has no further obligations under the Agreement.

    b.  Alternatively, Plaintiff properly terminated the Agreement "without cause" and Plaintiff has no further obligations under the Agreement.

    c.  Regardless of how the Agreement was terminated, it is now terminated and the "Term" of the Agreement has ceased, as the word "Term" is defined in Section 2 and 4 of the Agreement.

    d.  Defendant is not entitled to any further compensation from Plaintiff under the Agreement.

90.    Plaintiff alleges on information and belief that Defendant disputes these contentions, and that Defendant instead contends that: Plaintiff has not properly terminated the Agreement "for-cause" or without cause; that the Agreement is somehow

a "vested contract" that cannot be terminated; that Plaintiff is entitled to continue getting paid under the Agreement in perpetuity notwithstanding its failure to provide the Services or otherwise comply with its obligations and covenants under the Agreement.

91.    Plaintiff now seeks a declaration from this court that (a) Plaintiff properly terminated the Agreement "for-cause" and Plaintiff has no further obligations under the Agreement; (b) alternatively, Plaintiff properly terminated the Agreement "without cause" and Plaintiff has no further obligations under the Agreement; (c) regardless of how the Agreement was terminated, it is now terminated and the "Term" of the Agreement has ceased, as the word "Term" is defined in Section 2 and 4 of the Agreement; and (d) Defendant is not entitled to any further compensation from Plaintiff under the Agreement.

92.    A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiff may ascertain its rights, duties, and obligations under the Agreement, including without limitation, that Plaintiff has terminated the Agreement and that no further compensation is owed to Defendant related thereto.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests relief and judgment against Defendant as follows:

1.    For declaratory relief as requested above that (a) Plaintiff properly terminated the Agreement "for-cause" and Plaintiff has no further obligations under the Agreement; (b) alternatively, Plaintiff properly terminated the Agreement "without cause" and Plaintiff has no further obligations under the Agreement; (c) regardless of how the Agreement was terminated, it is now terminated and the "Term" of the Agreement has ceased, as the word "Term" is defined in Section 2 and 4 of the Agreement; and (d) Defendant is not entitled to any further compensation from Plaintiff under the Agreement.

2.    An entry of judgment in favor of Plaintiff and against Defendant;

3.    For special damages according to proof;

1    4.     For general damages according to proof;

2    5.     For attorney fees;

3    6.     For costs and expenses of suit, including, without limitation, expert witness

4             fees;

5    7.     For such other relief as the Court may deem just and proper.

Dated:  May 1, 2025

CALL & JENSEN
A Professional Corporation
John T. Egley
Chris C. Scheithauer

By: */s/ Chris C. Scheithauer*
      Chris C. Scheithauer

Attorneys for Plaintiff
Syncis Insurance Solutions, LLC

## **DEMAND FOR JURY TRIAL**

Plaintiff Syncis Insurance Solutions, LLC, by and through its counsel, makes this demand for a Jury Trial on all claims permitting a jury trial (Local Rule 38-1).

Dated:  May 1, 2025

CALL & JENSEN
A Professional Corporation
John T. Egley
Chris C. Scheithauer

By: */s/ Chris C. Scheithauer*
      Chris C. Scheithauer

Attorneys for Plaintiff
Syncis Insurance Solutions, LLC

COMPLAINT